UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Michael Bliss,<br><br>  Plaintiff,<br><br>  v.<br><br>United Parcel Service, Inc.; International Brotherhood of Teamsters; Rich Murray; Tony St. Hilaire; John Does,<br><br>  Defendants. | Civil Action No. 2:23–cv–47–KJD |

## OPINION AND ORDER
(Docs. 4, 25, 26)

Plaintiff Michael Bliss initially filed this action on January 9, 2023 in the Vermont Superior Court. On January 23, 2023, he filed an Amended Complaint against United Parcel Service (UPS), the International Brotherhood of Teamsters (IBT), Rich Murray, Tony St. Hilaire, and several "John Doe" Defendants. (Doc. 13.) The Amended Complaint generally alleges claims of retaliation, defamation, and "tortious [b]reach of [c]ontract with intentional conspiracy to breach contract." (*Id.*) UPS removed the action to this Court on March 8, 2023. (Doc. 1.)[1]

On March 13, 2023, Plaintiff filed an "objection" to UPS's notice of removal. (Doc. 4.) Plaintiff's objection asserts that Defendants' removal was untimely and requests that the Court "deny Defendant[s'] Notice of Removal." The Court construes "Plaintiff's Objection to Notice of Removal" as a Motion to Remand the matter to the Superior Court. (Doc. 4.) UPS and Defendant Murray respond that (1) the removal of the action to this Court was timely; and (2) the

---

[1] After Plaintiff objected to removal, Defendant Rich Murray joined UPS in opposing Plaintiff's objection. (Doc. 23.) The Court interprets the joint filing to manifest Defendant Murray's consent to removal.

Court may exercise subject matter jurisdiction over the case because federal law completely preempts Plaintiff's contract claim.  Specifically, Defendants assert that Plaintiff was employed with UPS under a collective bargaining agreement and the federal Labor Management Relations Act (LMRA) completely preempts contract claims arising from collective bargaining agreements.  (Doc. 23.)  Defendants further assert that the Court may exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because the claims derive from "a common nucleus of operative fact" as the federal claims.  (Doc. 1 at 4, ¶ 12.)

On April 3, 2023, Plaintiff filed a "Motion for Court Ruling on Defendant's Untimely Case Filing of 2:23-cv-00047-KJD," which attaches his objection to the notice of removal. (Docs. 25, 25-1.)  Plaintiff has also filed a Motion to Stay Early Neutral Evaluation pending the Court's ruling on his Motion for Court Ruling.  (Doc. 26.)

For the reasons discussed below, Plaintiff's Objection to Notice of Removal (construed as a Motion for Remand) (Doc. 4) and Motion for Ruling on Defendant's Untimely Case Filing (Doc. 25) are DENIED.  Further, Plaintiff's Motion to Stay Early Neutral Evaluation (Doc. 26) is DENIED AS MOOT without prejudice to renew.

I.      **Procedural Background and Plaintiff's Amended Complaint**

On January 24, 2023, the Vermont Superior Court ordered that a summons be issued for each of the four named defendants in the Amended Complaint.  The docket of this Court reflects that on January 25, 2023 the Superior Court issued summonses for IBT, Defendants Murray and St. Hilaire, and UPS.  (Doc. 14).  Also on that date, the Superior Court advised Plaintiff that the filing fee for his lawsuit was waived and provided instructions to complete service on the named Defendants.  (Doc. 15.)

Plaintiff attaches to his "Objection to Notice of Removal" two U.S. Postal Service receipts dated February 3, 2023. (Doc. 4-1, Exh. A.) These receipts reflect that Plaintiff sent two envelopes by certified mail to Barre, Vermont with an estimated delivery date of February 6, 2023. (*Id.*) A handwritten notation on one of the receipts suggests that the mailed item was "picked up" at the Post Office on February 6, 2023. (*Id.*) The receipts themselves do not contain any information as to the specific items mailed or the intended recipients of the mailings. Defendants, however, do not dispute that these receipts document Plaintiff's efforts to serve the Amended Complaint. (Doc. 23 at 2 n.2 ("Plaintiff suggests that UPS was served on February 3, 2023 but Exhibit A to his Motion only establishes that he mailed the Amended Complaint on February 3, 2023. (ECF No. 4.) Handwritten notes on Exhibit A to Plaintiff's Motion suggest that service was not received by UPS until February 6, 2023 . . . , which is consistent with Exhibit A[2] to Defendants' Notice of Removal, indicating that Defendants were served on February 6, 2023.").) UPS and Defendant Murray each waived service of summons on February 28, 2023, and the respective waivers were filed in the Superior Court on March 6, 2023 and March 8, 2023. (Docs 21, 22.) UPS removed the action to federal court on March 8, 2023.

The Amended Complaint is a one-page pleading alleging three counts. Count One appears to assert a retaliation claim under Vermont law against Defendant Murray and UPS. Count Two alleges defamation against Defendant Murray and UPS. Count Three asserts tortious breach of contract and conspiracy to breach a contract against IBT, UPS, Defendants Murray and St. Hilaire, and eight "John Doe" Defendants. (Doc. 13.) The initial Complaint attaches the December 2022 decision of the "New England Area Parcel Grievance Committee" related to

---

[2] Exhibit A contains a "Notice of Service of Process" generated by CSC, which UPS identifies as its registered agent for service of process. (Doc. 1 at 1, ¶ 2.) Exhibit A documents that CSC received service of process on February 6, 2023.

Plaintiff's discharge from employment. (Doc. 9-1.) It appears from the document that representatives of Local Union 597 and UPS formed a Panel to consider Plaintiff's grievance. The grievance was denied. (*Id*.) The document identifies Defendant Murray as the UPS regional labor manager and Defendant St. Hilaire as the business agent for Local 597 in Barre, Vermont. (*Id*.) Plaintiff identifies three of the "John Doe" Defendants as IBT "Jury Panel" members; three of the "John Doe" Defendants as "UPS Jury Panel" members; and the two remaining "John Doe" Defendants as "Jury Panel Chairman" and "Arbitrator," respectively. (Doc. 13.) The Amended Complaint does not contain any factual allegations. Plaintiff seeks $100,000 in compensatory damages and $1,000,000 in punitive damages. (*Id*.)

## II.   Discussion

### A.   Motion For Remand

Plaintiff requests remand of this matter to state court because in his view Defendants failed to comply with the requirements for timely removal under 28 U.S.C. § 1446. (Doc. 4.) He contends that because "Plaintiff officially served defendant on February 3, 2023 with complaint[,] summons[,] and waiver of service" (Doc. 4 at 2, ¶ 1 (citing Exh. A)), Defendants' removal on March 8, 2023 was not within the thirty days prescribed in § 1446(b). He further notes the "possibility . . . that [D]efendant UPS, via email, received a copy of Plaintiff's complaint prior to February 6, 2023," and asks the Court to "direct UPS to disclose when it first received Plaintiff's complaint, by 'through service or otherwise', or any other means, via email or other means, from anyone." (*Id.* ¶ 2.) Defendants UPS and Murray oppose remand, asserting that removal was timely because they were served on February 6, 2023, when they received

Plaintiff's Amended Complaint and a waiver of service of summons, and therefore the March 8, 2023 Notice of Removal was filed within thirty days of service.[3]

### 1. Legal Standards Governing Removal

The federal removal statute provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Therefore, a civil action may only be removed to federal court if it "could have been brought, originally, in a federal district court." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability." *Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (internal quotation marks omitted). This is because removal jurisdiction "implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum." *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 324 (S.D.N.Y. 2005). Accordingly, the "party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011).

Whether a claim "arises under" federal law for purposes of § 1331 is determined by the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a

---

[3] The Court takes judicial notice that the month of February in 2023 consisted of twenty-eight calendar days. *See* Fed. R. Evid. 201(b) (authorizing court to judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

5

federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). According to the well-pleaded complaint rule, a plaintiff is "the master of the claim" such that "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*. Thus, the fact that the plaintiff's claim "could be stated under federal law does not prevent him from stating it under state law only." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). When a plaintiff has elected to proceed on a state-law claim, federal jurisdiction "may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharm. Inc v. Thompson*, 478 U.S. 804, 810 n.6 (1986).

"A case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205–06 (2d Cir. 2001) (internal quotation marks omitted). "A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support [the] removal petition." *Id.* (alteration in original) (internal quotation marks omitted).

With respect to the timing of removal, the notice of removal must "be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . . or within 30 days after the service of summons upon the defendant." 28 U.S.C. § 1446(b)(1). After removal, a plaintiff may seek remand of the case "on the basis of any defect." 28 U.S.C. § 1447(c). However, if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id*. "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." 28 U.S.C. § 1447(d).

When considering a motion to remand for lack of subject matter jurisdiction, "courts assume the truth of non-jurisdictional facts alleged in the complaint, but may consider materials

outside of the complaint, such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Guzman v. First Chinese Presbyterian Cmty. Affairs Home Attendant Corp.*, 520 F. Supp. 3d 353, 356 (S.D.N.Y. 2021).

## 2. Whether Plaintiff's Action Was Properly Removed

### a. Timing of the Removal

The thirty-day removal period under 28 U.S.C. § 1446 does not begin to run until a defendant is formally served or elects to waive service. A "defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Id.* at 350; *see also Whitaker*, 261 F.3d at 202 (citing *Murphy Bros*. and noting that "the commencement of the removal period could only be triggered by formal service of process, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading").

Plaintiff is incorrect that he "officially served" defendant when he mailed the Amended Complaint and waiver form on February 3, 2023, thereby triggering the thirty-day removal period on that date. (Doc. 4 at 2, ¶ 1.) *See Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420, 429 (D. Vt. 2009) ("[Plaintiff's] contention that the 30-day period commenced when the defendants received copies of his initial filings . . . is inconsistent with the *Murphy Bros.* holding that the clock only commences with 'formal process.'").

The record demonstrates that UPS' registered agent received service of the Summons and Complaint on Monday February 6, 2023 (Doc. 1-1 at 2), and that it filed its Notice of Removal on March 8, 2023 (Doc. 1), which was the thirtieth day after receipt of formal service. Because Defendants' Notice of Removal was timely filed, Plaintiff's Motion to Remand the case to state court on timeliness grounds is DENIED.[4] (Doc. 4.)

### b. Subject Matter Jurisdiction

Having concluded that the removal was timely, the Court must also determine whether it may exercise subject matter jurisdiction over the action. "[S]ubject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). Federal courts "have an independent obligation to consider the presence or absence of subject matter jurisdiction." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* 28 U.S.C. § 1447(c) (If "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). "[T]he party asserting federal jurisdiction bears the burden of establishing jurisdiction" exists. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).

Applying the well-pleaded complaint rule, to find federal question jurisdiction, "plaintiff's statement of his own cause of action [must] show[] that it is based" on federal law.

---

[4] Within the thirty-day removal period, "'all defendants who have been properly joined and served must join in or consent to the removal of the action' [under] the so-called rule of unanimity." *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021) (quoting 28 U.S.C. § 1446(b)(2)(A)). The rule of unanimity, however, is not a bar to removal when the non-joining defendants have not been served with process at the time the notice of removal is filed. *See Snakepit Automotive, Inc. v. Superperformance Int'l, LLC*, 489 F. Supp. 2d 196, 201–02 (E.D.N.Y. 2007). The docket in this case reflects that UPS and Defendant Murray waived service of process. (Docs. 21, 22.) As there is no indication that the remaining Defendants have been served, the rule of unanimity does not prohibit removal of this action due to their lack of consent to removal.

8

*Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (internal quotation marks omitted). As masters of their complaint, plaintiffs are free to choose the statutory provisions under which they will bring their claims. *See Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010). In this case, the Amended Complaint does not explicitly reference a federal cause of action. However, a plaintiff cannot avoid federal jurisdiction by "artful pleading." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27 (2d Cir. 1988). In other words, a plaintiff cannot defeat removal "by framing in terms of state law a complaint the real nature of which is federal regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint." *Id*. at 27–28 (internal quotation marks omitted).

  Defendants contend that the Court may exercise subject matter jurisdiction in this case because federal law preempts Plaintiff's contract claim. "Because preemption is usually a defense to suit (and therefore necessarily does not appear on the face of the complaint), a defendant 'generally may not remove an action on the basis of federal preemption.'" *Local #1674 of Howard Mental Health v. HowardCenter, Inc.*, No 2:14-cv-67, 2014 WL 4240095, at *3 (D. Vt. Aug. 27, 2014) (quoting *Franklin H. Williams Ins. Tr. v. Travelers Ins. Co.*, 50 F.3d 144, 147 (2d Cir. 1995)). Nevertheless, the Supreme Court has recognized a limited exception to this rule in cases of "complete preemption;" that is, "when Congress has so completely preempted an area of law that any civil complaint is necessarily federal in character." *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 88 (2d Cir. 2010); *Snakepit Automotive, Inc.*, 489 F. Supp. 2d at 200 (observing that the well-pleaded complaint rule "do[es] not prevent a federal court from looking beyond a plaintiff's complaint to determine whether there is federal question jurisdiction in certain limited circumstances"). Under the complete-preemption doctrine, "certain federal statutes are construed to have such 'extraordinary' preemptive force that state-

law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). In such cases, a court is "obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Id.*

According to Defendants, Plaintiff claims that UPS and his union have conspired to breach the collective bargaining agreement between them, a claim that arises under Section 301 of the LMRA,[5] which "completely preempts actions by persons employed under a collective bargaining agreement against their employers and/or their unions based on issues requiring an examination of the collective bargaining agreement." (Doc. 23 at 1–2.)   Therefore, the Court's exercise of subject matter jurisdiction in this case turns on whether federal law "completely preempts" Plaintiff's contract claims.

### i. Section 301 Preemption

Section 301 of the LMRA carries the "unusual preemptive power" that creates federal jurisdiction over claims that otherwise sound in state law. *Livadas v. Bradshaw*, 512 U.S. 107, 122 n.16 (1994). When § 301 preempts a state-law claim, federal jurisdiction may be established "even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003).

The Supreme Court has interpreted Section 301 as doing "more than confer[ring] jurisdiction in the federal courts over labor organizations . . . , [i]t expresses a federal policy that federal courts should enforce [collective-bargaining] agreements on behalf of or against labor organizations." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455 (1957).

---

[5] Under LMRA Section 301, 29 U.S.C. § 185(a), "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

10

The provision "governs claims founded directly on rights created by collective-bargaining agreements [(CBA)], and also claims substantially dependent on analysis of a [CBA]." *Caterpillar Inc.*, 482 U.S. at 394 (internal quotation marks omitted). Therefore, "when resolution of a state law claim is substantially dependent upon or inextricably intertwined with analysis of the terms of a CBA, the state law claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Whitehurst v. 1199SEIU United Healthcare Workers East*, 928 F.3d 201, 206 (2d Cir. 2019) (internal quotation marks omitted).

A state-law claim is "'independent' of a CBA for § 301 preemption purposes if 'the state-law claim can be resolved without interpreting the agreement itself.'" *Local #1674 of Howard Mental Health*, 2014 WL 4240095, at *4 (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001)). "As a result, a claim that requires mere consultation of a CBA is not necessarily preempted." *Id.*; *see Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

In this case, the one-page Amended Complaint provides no detail as to the nature of Plaintiff's allegations. For example, Plaintiff does not explicitly state that the contract allegedly breached was in fact a CBA. UPS' Notice of Removal, however, provides the following information relevant to assessing whether Section 301 completely preempts Plaintiff's contract claims:

> At all times material to the Amended Complaint Plaintiff was a member of a collective bargaining unit at UPS represented by IBT.[6] At all times material to the Amended Complaint, the terms of Plaintiff's employment relationship with his employer UPS have been set forth in collective bargaining agreements between UPS and IBT. Plaintiff acknowledges and relies upon the existence of the

---

[6] UPS describes IBT as "a labor organization as defined in Section 2(5) of the Taft-Hartley Act, as amended, 29 U.S.C. § 152(5)[,] and Section 301(a),(b), and (c), 29 U.S.C. § 185(a), (b), and (c)." (Doc. 1 at 2, ¶ 5.)

11

> collective bargaining agreement between UPS and IBT in his Amended Complaint—specifically, his claim against all Defendants for breach of contract.
>
> . . . .
>
> Plaintiff's claim against UPS for breach of contract is a direct claim that UPS violated the terms of Plaintiff's collective bargaining agreement, as no other agreement exists that could possibly constitute a "contract" between UPS and Plaintiff.

(Doc. 1 at 2, ¶ 6; *id.* at 3, ¶ 10.) Certain features of the Amended Complaint strongly suggest that Plaintiff's claims derive from an arbitration proceeding that did not resolve in his favor. Specifically, the "John Doe" Defendants include an "Arbitrator" and "Jury Panel" members—three associated with IBT and three associated with UPS—that is indicative of a dispute resolution process that involved equal representation between the employer and the labor union. (Doc. 13.) Arbitration of employee disputes is a common feature of CBAs between an aggrieved employee's labor union and his or her employer. *See, e.g.*, *Collaku v. Temco Service Industries, Inc.*, 18-CV-4054 (VEC), 2019 WL 452052 (S.D.N.Y. Feb. 5, 2019) (finding Section 301 completely preempted Plaintiff's action in state court to vacate arbitrator's decision rendered pursuant to CBA). Additionally, as noted above, Plaintiff attached to his initial Complaint a grievance decision jointly rendered by a committee of union and UPS representatives. (Doc. 9-1.) The information in that document suggests that Plaintiff was a member of a collective bargaining unit at UPS represented by IBT.

There is a further indication that Plaintiff's claims likely arise from a dispute resolution process provided for in a CBA. Plaintiff's objection to Defendants' Notice of Removal (containing the representation above that the terms of his employment relationship with UPS were set forth in a CBA) takes issue only with the timing of the removal; it does not contest Defendants' statement that the breach-of-contract claim in the Amended Complaint refers to the

CBA between UPS and IBT.  Consequently, it appears that resolution of Plaintiff's breach-of-contract claim necessarily will involve analysis of the terms of the CBA.  *See Cestaro v. Prohaska*, --- F. Supp. 3d --- , 2023 WL 2998991, at *2 (S.D.N.Y. Apr. 19, 2023) (holding LMRA preempts plaintiff's breach-of-contract and wrongful-termination claims because resolution "necessarily depend[s]" on interpreting the labor union's Constitution to "decide the claims' merits"); *see also Collaku*, 2019 WL 452052, at *4–5 (finding Section 301 preemption where challenge to arbitrator's dismissal of petitioner's claims was based directly on rights created by a CBA); *Guzman*, 520 F. Supp. 3d at 360–61 ("[C]ourts in this Circuit have long understood that a plaintiff cannot escape Section 301's preemptive sweep through the use of state court motions, including efforts to challenge federal labor arbitrations on state law grounds.").

Therefore, based on the information presently before the Court, Section 301 of the LMRA completely preempts the contract claim in Count 3 of the Amended Complaint, conferring on this Court subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1441(a).[7]

### ii.   Supplemental Jurisdiction

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Counts One and Two of the Amended Complaint assert claims of retaliation and defamation against UPS Labor Manager Murray and UPS that also appear to arise from the adverse employment decision.  As it appears that all of Plaintiff's claims are related to his employment with UPS and termination,

---

[7] If it should subsequently be determined that the contract claim in Count 3 is not substantially dependent on the terms of a CBA, the Court may revisit subject matter jurisdiction and remand if jurisdiction is lacking.  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

they share a common factual basis.  The retaliation and defamation claims are so related to the federal claim that it is appropriate for this Court to exercise supplemental jurisdiction over the state-law claims.

### B. Motion to Stay

As the Court has denied Plaintiff's Objection to Notice of Removal (construed as a Motion for Remand) (Doc. 4) and Motion for Ruling on Defendant's Untimely Case Filing (Doc. 25), Plaintiff's Motion to Stay Early Neutral Evaluation is DENIED AS MOOT without prejudice to renew.  (Doc. 26.)

### C. Leave to Amend

The Federal Rules of Civil Procedure allow a party to "amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a).  In this case, Defendants UPS and Mr. Murray filed an Answer on March 15, 2023.  Thus, Plaintiff cannot amend his Complaint without either "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Courts are instructed to "freely give leave when justice so requires."  *Id.*  Given the Court's determination that Section 301 of the LMRA preempts Plaintiff's breach-of-contract claim, this conclusion may impact the breach-of-contract claims Plaintiff is attempting to assert.  To the extent that Plaintiff requests leave to amend the present Complaint to allege a claim under Section 301, he must file a Motion for leave to file a Second Amended Complaint within 30 days of this Order.  *See* Local Rule 15 (explaining the requirements for a Motion to Amend a filing).

Should Plaintiff seek and receive leave to amend, Plaintiff is advised that a proposed Second Amended Complaint, if filed, will supersede and completely replace the Amended

14


Complaint.  *See Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (noting "it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (internal quotation marks omitted)).  A Second Amended Complaint must re-state all of Plaintiff's factual allegations in their entirety and must set forth all claims he alleges against each defendant and all the relief he seeks, reference back to the original Complaint or Amended Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont.  *See* Fed. R. Civ. P. 8(a); L.R. 15(b).

## Conclusion

For the reasons stated above, Plaintiff's Objection to Notice of Removal (construed as a Motion for Remand) (Doc. 4) and Motion for Ruling on Defendant's Untimely Case Filing (Doc. 25) are DENIED.  Further, Plaintiff's Motion to Stay Early Neutral Evaluation (Doc. 26) is DENIED AS MOOT without prejudice to renew.

Dated at Burlington, in the District of Vermont, this 14th day of July 2023.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge